ARS COUNSEL, P.C.
Almuhtada Smith (SBN 263762)
asmith@arscounsel.com
515 S. Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 293-3565

Attorney for Plaintiff Jerome Christopher Hamilton

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME CHRISTOPHER HAMILTON, an individual,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>BLACK & SEXY TV, LLC, a California limited liability company,<br>BSTV, LLC, a California limited liability company,<br>DENNIS DORTCH, an individual, and<br>DOES 1 – 30, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-954<br><br>**COMPLAINT**<br><br>1. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1)(a))**<br>2. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))**<br>3. **DECLARATORY AND INJUNCTIVE RELIEF**<br>4. **ACCOUNTING**<br>5. **BREACH OF EXPRESS AND/OR IMPLIED CONTRACT**<br>6. **FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jerome Christopher Hamilton ("Plaintiff") alleges as follows:

## INTRODUCTION AND GENERAL ALLEGATIONS

1. This is a civil action seeking damages, accounting, declaratory and injunctive relief for trademark infringement arising under 15 U.S.C. § 1114(1) (referred to herein as the "Lanham Act"), breach of express and/or implied contract and copyright infringement arising under 17 U.S.C. §§ 101, et seq. (referred to herein as the "Copyright Act"), and other related causes of action.

2. In 2013, Plaintiff JEROME CHRISTOPHER HAMILTON (hereinafter "Plaintiff") commenced management representation services of "Black and Sexy TV," a web-based subscription service with various scripted series. As manager of "Black and Sexy TV" and between 2013 and 2017 Plaintiff handled all primary business matters with respect to the company and its programming content (including but not limited to the monetization of its content and business). Plaintiff's foregoing services were rendered pursuant to a management contract that entitled Plaintiff to fifteen percent (15%) of all gross receipts generated by the Plaintiff with the expectation of a full reporting on the profits related thereto. However, Plaintiff never received his full payments or a full accounting of the revenue that comprised such payments, which resulted in unpaid monies owned by Defendant to Plaintiff equaling $38,750. The foregoing debt of $38,750 was memorialized in Paragraph E of Exhibit D contained in the Black & Sexy TV, LLC Operating Agreement and Addendum dated as of January 1, 2018 ("**Partnership Agreemen**t").

3. On January 1, 2015, Plaintiff became a co-owner and partner in Black and Sexy TV (the "Business" or "Company") pursuant to the Black & Sexy TV, LLC Withdrawal and Buyout Agreement ("**Buyout Agreemen**t") dated as of December 6, 2020, and in connection with Plaintiff's role as a partner and co-owner providing strategic advisory services to the Defendants, Plaintiff was entitled to receive 12.5% of 100% of equity in the Business equaling 125 membership units and financial disbursements equal to Plaintiff's equity that were generated from the Business's profits each year. However, Plaintiff never received his full financial disbursements or a full accounting of such debts owed by the Company to Plaintiff.

4. Furthermore, pursuant to the Partnership Agreement and the Buyout Agreement, Plaintiff was also entitled to $38,750 in unpaid payments ("**Debt**") to Plaintiff based on Business's failure to pay Plaintiff his management fees and such amount was agreed to be paid to Plaintiff from income received

**COMPLAINT FOR DAMAGES**

by the Business, revenue generated from the Business or proceeds from the sale of the Business (per the terms of the Buyout Agreement). However, Defendant never paid any portion of the Debt to Plaintiff, nor provided an accounting of such Business monies that would have been used to pay the Debt.

5. On or about December 6, 2020, Plaintiff executed the Buyout Agreement with BSTV, LLC (formerly known as Black & Sexy TV, LLC a/k/a The Black Group) with respect to the Plaintiff's equity, debt and other financial obligations owed to Plaintiff. Paragraph 1 of the Buyout Agreement states that the Fair Market Value of the Membership Units as of the Effective Date equals Twenty Thousand Two Hundred and Fifty United States Dollars (US $20,250.00,) and to be paid as follows (collectively, "**Company's Financial Commitment #1**"): "*...in eight (8) equal quarterly installment payments over a two (2) year period, which quarterly payments shall be equal to US $2,531.25 and payable thirty (30) days after the end of such applicable quarter commencing with the first quarter payment of 2021 being paid in January 2021; provided however, in the event any payment is more than 45 days late it shall immediately begin to accrue interest in the amount of 5% per month, cumulatively, and the outstanding principal payment shall be paid with such applicable interest.*" Paragraph 1 of the *Agreement further stipulated that: "The Buyout shall be facilitated such that the entire Fair Market Value in exchange for the Hamilton Membership Units shall be conveyed to Hamilton within two (2) years after the Effective Date" (i.e., December 6, 2022) [and] "the Parties acknowledge and agree that Company's timely payment of the foregoing installments to Hamilton and failure to complete full payment of the Buyout by the anniversary date of the Effective Date shall be <u>considered material breaches of this Agreement</u>.*"

6. The Buyout Agreement also stated that in connection the Tubi TV (a television streaming platform) deal the following terms would apply to Plaintiff's compensation from such deal (collectively, "**Company's Financial Commitment #2**"): "*Hamilton will receive the below commissions directly off-of-the-top of such monies paid to or generated directly off-of-the-top of such monies paid to or generated by Company. Furthermore, for the purpose of clarity such payments to Hamilton shall not be reduced by or offset against any other payments he is entitled to receive in connection with the Agreement or the terms of this addendum. Hamilton's commission for sourcing the Tubi TV deal shall be 5% off-the-top of such payments made to Company related to the Tubi TV deal. Furthermore, Company agrees to pay Hamilton the foregoing amounts in a lump sum within 30 days of receiving any payments in connection*

**COMPLAINT FOR DAMAGES**

*with such deal, which payment shall be accompanied by the original payment statement from Tubi TV or payment receipt from Tubi TV in order for Hamilton to verify the accuracy of such payments. In the event any payment to Hamilton is more than 45 days late it shall immediately begin to accrue interest in the amount of 5% per month, cumulatively, and the outstanding principal payment shall be paid with such applicable interest thereon.*" However, nearly 3 years after the Agreement became effective and even after multiple annual requests made by Plaintiff to Defendant via text, phone and email, Plaintiff had never received any documentation (statements, accounting records, or otherwise) in connection with the Tubi TV deal until Plaintiff received them from Defendant on January 11, 2024 ("**Defendant's Profit Statements**"), based on a Plaintiff's second demand notice sent to Defendant on December 14, 2023 (the first Demand Letter was sent by Defendant to Plaintiff on July 20, 2023). In addition to the Company's gross failure to provide Tubi TV accounting statements, Plaintiff has never received one single payment with respect to the 2021 Tubi TV deal. ("Company's Financial Commitment #1" and "Company's Financial Commitment #2" shall hereinafter be referred to collectively, as "**Company's Outstanding Financial Obligations.**")

7. Between 2013 and 2020, Plaintiff worked alongside DENNIS DORCH, an individual, and DOES 1-30, INCLUSIVE, (hereinafter "Defendants," collectively) on the aforementioned business. During this time, the parties entered into express and/or implied in fact contracts between each other to create and share in the profits from the aforementioned business. The existence of these contracts can be shown in both the words and/or conduct of the parties interpreted in the light of the subject-matter and of the surrounding circumstances, as well as through express documents executed by both parties.

8. However, Defendants breached the Buyout Agreement and the Partnership Agreement and proceeded to continue to use Plaintiff's income, Debt and intellectual property co-owned by Plaintiff in the Business (the "**IP**") (including but not limited to Black and Sexy TV content copyrights and trademarks) and services rendered by Plaintiff without payment to Plaintiff for Plaintiff's share in the sale or exploitation of "Black and Sexy TV" content, intellectual property rights and services.

9. Upon information and belief, Defendants proceeded to operate as "Black and Sexy TV" and exploit Plaintiff's intellectual property rights without permission or compensation to Plaintiff.

10. Upon information and belief, Defendants have licensed programming content to Tubi TV **(see photo of Tubi TV website offering the Company's programming attached hereto as "Exhibit**

**A"**), Comcast Xfinity (**see Comcast Xfinity announcement on their website link here and photo attached hereto as "Exhibit B")** and other entertainment content programming platforms (collectively, hereinafter "**Platforms**") and obtained compensation therefrom without permission or compensation to Plaintiff.

11. Plaintiff brings this action for, *inter alia*, trademark infringement in connection with unauthorized and/or uncompensated use of Plaintiff's trademark for "Black and Sexy TV."

12. Plaintiff brings this action for, *inter alia*, copyright infringement in connection with unauthorized and/or uncompensated use and exploitation of Plaintiff's IP.

13. By this action, Plaintiff seeks default judgment: by (a) Defendant's default of the Buyout Agreement and Partnership Agreement by: (i) refusing to fulfill its payment and revenue reporting obligations to Plaintiff (ii) infringing on Plaintiff's copyright ownership pursuant to 17 U.S.C. § 506(a), by disposing of intellectual property under the control and/or ownership of Company without Plaintiff's consultation or approval and (iii) unjustly enriched by claiming ownership of the following monies owed to our Plaintiff; (1) $38,750 in unpaid principal and $31,000 in unpaid interest payments, (2) 12.5% of all revenue proceeds that have been generated from the sale, license, and distribution of the Company's intellectual property and other revenue streams, and (3) interest on those unpaid monies.

14. By this action, Plaintiff seeks judgment: (b) Declaring that Defendants' unauthorized use and uncompensated exploitation of Plaintiff's "Black and Sexy TV" IP which willfully infringed Plaintiff's copyrights in violation of the Copyright Act.

15. Further, by this action Plaintiff seeks: (c) Judgment for a preliminary and permanent injunction enjoining Defendants and their respective agents, employees, officers and directors, attorneys, successors, licensees, and assigns, and all those persons acting in concert and combination therewith, from further infringement of Plaintiff's Trademark and copyright in the Company's programming content, including but not limited to the sale and distribution of such content and continued use of the Trademark; (d) Awarding Plaintiff, at their election, either (i) actual damages and the profits derived by Defendants as a result of their infringing activities, pursuant to 17 U.S.C. § 504(b) and/or 15 U.S.C. § 1117(a), or (ii) statutory damages in the maximum amount with respect to the Composition and Trademark, pursuant to 17 U.S.C. § 504(c) and/or 15 U.S.C. § 1117(a); (e) For an accounting, the imposition of a constructive trust and restitution and disgorgement of Defendants' unlawful profits and

benefits obtained as a result of their misappropriation, infringement and breach of their agreement with Plaintiff and damages according to proof; (f) For punitive and exemplary damages in such amount as may be awarded at trial; (g) For prejudgment interest according to law; and (h) Awarding Plaintiff his attorneys' fees and full costs pursuant to 17 U.S.C. §505 and 15 U.S.C. § 1117.

## PARTIES

16. Plaintiff JEROME CHRISTOPHER HAMILTON is an individual, co-owner of the "Black and Sexy TV" trademark, intellectual property and its corporate entity, BSTV, LLC, who resides in Liverpool, NY. and BSTV, LLC, corporate entity in Los Angeles, CA, Black & Sexy TV, LLC, corporate entity in Los Angeles, CA, Dennis Dortch, an individual and co-owner of "Black and Sexy TV" trademark, intellectual property and its corporate entity, BSTV, LLC who resides in Los Angeles, CA.

17. On information and belief, Defendant BLACK & SEXY TV, LLC and BSTV, LLC are corporations engaged in systematic and continuous business in the State of California that are involved in the infringement and/or benefits therefrom or continues to perpetuate the infringement, which also took place in Los Angeles, California in whole or in part.

18. On information and belief, Defendant DENNIS DORTCH is an individual doing business in the State of California involved in the infringement which took place in Los Angeles, California.

19. On information and belief, DOES 1 through 30, inclusive, is an individual doing business in the State of California involved in the infringement which took place in Los Angeles, California.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the laws of the United States and the controversy arises under the Copyright Act (17 U.S.C. §§ 101 et seq) and Lanham Act (15 U.S.C. § 1114(1)).

21. This Court has supplemental jurisdiction over the related state claims herein under 28 U.S.C. § 1367 in that these claims form part of the same case and controversy as the federal claims herein.

22. This Court has personal jurisdiction over Defendants on the grounds that they reside in and/or are doing business in this State and District as all Defendants have purposefully availed themselves of the jurisdiction of this Court by transacting business and committing unlawful acts of

infringement in this Judicial District and the State of California concerning the Trademark and IP at issue in this action.

23. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 (a) and (b) because a substantial part of the events that are the subject matter of this lawsuit occurred and are occurring in this judicial district.

## FIRST CAUSE OF ACTION

### Trademark Infringement 15 U.S.C. § 1114(1)(a)

### Against Defendants Dennis Dorth and DOES 1-30

24. Plaintiff realleges and incorporates each and every allegation contained in the paragraphs 1 through 23 above with the same force and effect as if said allegations were fully set forth herein.

25. At all times relevant herein Plaintiff is a co-owner of BSTV, LLC and thus, co-owns the "Black and Sexy TV" trademark (hereinafter the "Trademark").

26. Plaintiff, is a partner and co-owner in the "Black and Sexy TV" name and mark in commerce in connection with virtually all of the Black and Sexy TV programming.

27. Defendants had both actual and constructive knowledge of Plaintiff's ownership of and rights in its federally registered marks.

28. Defendants continue to use in commerce federally registered marks co-owned by Plaintiff without Plaintiff's approvals.

29. Defendants' infringing use of Plaintiff's Trademark in connection with the programming is likely to cause, and has caused, confusion, mistake or deception as to the Defendant having Plaintiff's approval to use such marks, in violation of 15 U.S.C. § 1114.

30. Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiff's rights to control the use of such Trademark. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

31. As a result of Defendants' infringement, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff and "Black and Sexy TV" in its federally registered marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

**COMPLAINT FOR DAMAGES**

32. By this action, Plaintiff hereby seeks judgment: (a) Declaring that Defendants' unauthorized distribution of Plaintiff's Trademark "Black and Sexy TV" willfully infringed Plaintiff's Trademark in violation of 15 U.S.C. § 1114(1); (b) Judgment for a preliminary and permanent injunction enjoining Defendants and their respective agents, employees, officers and directors, attorneys, successors, licensees, and assigns, and all those persons acting in concert and combination therewith, from further infringement of Plaintiff's Trademark, including but not limited to the continued use of the Trademark; (c) Awarding Plaintiff, at their election, either (i) actual damages and the profits derived by Defendants as a result of their infringing activities, pursuant to 15 U.S.C. § 1117(a), and/or (ii) statutory damages in the maximum amount with respect to the Trademark, pursuant to 15 U.S.C. § 1117(a); (d) For an accounting, the imposition of a constructive trust and restitution and disgorgement of Defendants' unlawful profits and benefits obtained as a result of their misappropriation and damages according to proof; (e) For punitive and exemplary damages in such amount as may be awarded at trial; (f) For prejudgment interest according to law; and (g) Awarding Plaintiff his attorneys' fees and full costs pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Copyright Infringement 17 U.S.C. § 501(a)

### Against All Defendants

33. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-33, inclusive, as if fully set forth herein.

34. Plaintiff did not authorize or consent to Defendants licensing to the use of intellectual property co-owned by Plaintiff without compensation, which constitutes an infringement of Plaintiff's copyrights and interests thereto.

35. Specifically, without authorization or consent, Defendants have exploited, sold and distributed the IP solely for the purpose of their own financial gain with no intention nor action to compensate Plaintiff.

36. Upon information and belief, Defendants have collected monies and royalties from the sale or other exploitation of Plaintiff's IP and Defendants have retained a portion of those monies and royalties without submitting any amount to Plaintiff.

**COMPLAINT FOR DAMAGES**

37. Upon information and belief, Defendants have created derivative works from Plaintiff's IP with no compensation to Plaintiff, thereby further infringing on Plaintiff's copyright.

38. Defendants' conduct, including infringement, has been, and continues to be, willful and knowing and with utter and reckless disregard for Plaintiff's rights, and, as such, Defendants' direct and willful acts of infringement entitle Plaintiff to recover from Defendants damages pursuant to 17 U.S.C. § 504.

39. Accordingly, Plaintiff is entitled to compensatory and/or statutory damages in an amount to be determined at trial, in addition to punitive damages, interest, costs and a statutory award of attorneys' fees.

40. Plaintiff does not have an adequate remedy at law for Defendants' wrongful conduct in that (i) Plaintiff' copyright is unique and valuable property which has no readily determinable market value; (ii) the infringement by the Defendants constitutes an interference with Plaintiff' goodwill and professional reputation; and (iii) Defendants' wrongful conduct, and the damages resulting to Plaintiff therefrom, is continuing. Defendants' use of copyright infringement has caused Plaintiff irreparable injury, and Defendants threaten to continue to commit these acts.

41. By reason of the foregoing acts of copyright infringement, Plaintiff is entitled to the impounding and destruction of all copies or video files which have been made or used in violation of the Plaintiff's rights, and of all masters or other articles by means of which such copies or video files may be reproduced pursuant to the Copyright Act, 17 U.S.C. § 503.

42. By reason of the foregoing acts of copyright infringement, Plaintiff is entitled to actual damages including all profits reaped by the Defendants as a result of their infringement pursuant to the Copyright Act, 17 U.S.C. § 504. Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c) for each infringement. Therefore, Plaintiff demand an accounting to ascertain such profits.

43. Pursuant to 17 U.S.C. § 505, Plaintiff is also entitled to costs and attorney's fees.

## THIRD CAUSE OF ACTION

### Declaratory and Injunctive Relief

### Against All Defendants

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-43, inclusive, as if fully set forth herein.

45. Plaintiff alleges that he possesses a beneficial interest in the "Black and Sexy TV" Trademark and IP. The Defendants have, individually, and collectively claimed to own such rights independently of Plaintiff.

46. A judicial declaration is necessary to determine the rights and obligations of the parties.

47. As a result, Plaintiff seeks declaratory judgment that (a) Plaintiff has rights conferred upon a trademark co-owner under the Lanham Act to the "Black and Sexy TV" Trademark; (b) Plaintiff has rights conferred upon a copyright co-owner under the Copyright Act to the IP, including without limitation the right to manufacture, distribute, sell and exploit the IP and/or to grant derivative work licenses therefore including the license required for Defendants to exploit the Infringing Work, (c) none of these Defendants have any right to exploit the Trademark or IP without Plaintiff's written approval and agreement to compensate Plaintiff for such use, and (d) and that any further exploitation of the Trademark or IP constitutes willful trademark and copyright infringement. Plaintiff further seeks injunctive relief requiring that Defendants disgorge to Plaintiff all monies collected by them within the last six (6) years as purported trademark and/or copyright owners of the Trademark or IP and any other derivative works.

48. Plaintiff is entitled to an injunction enjoining Defendants and their agents, employees, and all other persons in active concert or privity or in participation with them, from directly or indirectly infringing on Plaintiff's Trademark or copyright in the IP or from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived, copied, and/or sampled from the IP, in whatever medium, or to participate or assist in any such activity.

49. By reason of the foregoing acts of trademark and copyright infringement, Plaintiff is entitled to declaratory relief and a permanent injunction enjoining Defendants from continuing the aforesaid acts of infringement pursuant to the Lanham Act, 15 U.S.C. § 1117(a), and Copyright Act, 17 U.S.C. § 502.

## FOURTH CAUSE OF ACTION

### Accounting

---

**COMPLAINT FOR DAMAGES**

**Against All Defendants**

50. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-49, inclusive, as if fully set forth herein.

51. Under the causes of action as set forth herein, Plaintiff may recover any and all profits of Defendants that are attributable to their misappropriation and conversion of Plaintiff's Trademark and property rights.

52. Upon information and belief, Defendants received, and continue to receive, profits from the sale of and contracts related to the Trademark and the IP.

53. Plaintiff is entitled to a full accounting of all net profits received by Defendants in connection with the creation, marketing, use, distribution and sale of the Trademark and IP.

54. Accordingly, due to the abovementioned violations of federal, state, and common law, Plaintiff demands that the Defendants render an accounting to ascertain the amount of such profits which have been realized to such violations.

55. As a direct and proximate result of the Defendants' misappropriation, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement are appropriate. Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants, and each of them, are constructive trustees for the benefit of Plaintiff and order that Defendants convey to the Plaintiff all gross receipts and benefits received or to be received that are attributable to the infringement of the Trademark and IP.

56. The exact amount of money due from Defendants is unknown to Plaintiff, and can only be ascertained through an accounting.

**FIFTH CAUSE OF ACTION**

**Breach of Express and/or Implied Contract**

**Against all Defendants**

57. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-56, inclusive, as if fully set forth herein.

58. Between 2013 and 2015 Plaintiff was an executive producer and business manager for Black and Sexy TV and Plaintiff worked alongside Defendants on the aforementioned IP. During this

**COMPLAINT FOR DAMAGES**

time, the parties entered into express contracts between each other to create and share in the profits from the aforementioned projects in exchange and consideration for Plaintiff's contribution as an executive producer and business manager.

59. Between 2015 and 2020 Plaintiff worked as a co-owner of Black and Sexy TV and equity partner in the organization (as described within the first page of the Buyout Agreement). During this time, the parties entered into an express contract between each other to create and share in the profits from the aforementioned projects in exchange and consideration for Plaintiff's contribution as a co-owner and equity partner pursuant to the Partnership Agreement.

60. Between 2020 and 2023 Plaintiff entered into the Buyout Agreement, contingent upon a buyout payment of Plaintiff's equity, repayment of Defendant's Debt to Plaintiff and payment of revenue proceeds owned to Plaintiff for services rendered. However, Defendants breached the agreement after Defendants (i) failed to complete the Buyout payments which should have totaled Twenty Thousand Two Hundred and Fifty United States Dollars (US $20,250.00,) in eight (8) equal quarterly installment payments over a two (2) year period, which quarterly payments were to be equal to US $2,531.25 (not including interest); (ii) failed to make the Tubi TV deal payments to Plaintiff (as required under the Buyout Agreement) which payments should have been 5% off-the-top of such payments made to Defendant related to the Tubi TV deal (not including interest); and (iii) failed to make the an outstanding Debt payment to Plaintiff equal to $38,750 in unpaid payment allocations and unreimbursed Company-related expenses (not including interest).

61. Upon information and belief, Defendants obtained (i) compensation from Tubi TV with no payment to Plaintiff, and (ii) obtained compensation from other business deals with no payment to Plaintiff pursuant to the buyout terms or outstanding debt terms.

62. Plaintiff has been damaged as a direct and proximate result of Defendants' breach in an amount to be proven at trial. Both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

63. Plaintiff hereby demands payment general damages and special damages by Defendants due to Defendants' breach.

## SIXTH CAUSE OF ACTION
**Fraud**

**COMPLAINT FOR DAMAGES**

**Against All Defendants**

64. Plaintiff repeats and realleges the allegations set forth in paragraph 1-63, inclusive, as if fully set forth herein.

65. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, who made the representations herein, are the authorized agent of each other and at the time of making the representations herein alleged and at all times herein mentioned, were acting within in their mutual course and scope of their agency and authority for each other.

66. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by their conduct. Defendants and each of them made the following material knowingly false representations to Plaintiff:

   a. The Plaintiff was entering into a Partnership Agreement with a valid legal entity in good stating with the State of California at the time the Partnership Agreement was executed on January 1, 2018, however, the legal entity "Black & Sexy TV, LLC," which continues to do business with various companies such as Apple **(see Exhibit C)** has been suspended and not in good standing with the State of California since November 9, 2017. (**See Exhibit D)**

   b. The Plaintiff was receiving (i) ownership in intellectual property and Company profits, (ii) accounting and booking reports with respect to Defendant's revenue proceeds from Companies engaged in business with Defendant and (iii) authority over the disposition of the Company's intellectual property, however, Defendant's fraudulently conveyed Plaintiff's rights to another legal entity (e.g., BSTV, LLC or such other person or entity) for the express purpose of putting them beyond the reach of Plaintiff, evidenced by Defendant's use of the legal entity BSTV, LLC in the documentation related to its intellectual property transactions following execution of the Partnership Agreement with Plaintiff.

   c. Plaintiff would be paid the Debt owed by Defendant as stipulated in Partnership Agreement however, no payments of were ever made to Plaintiff due to the Defendant's

**COMPLAINT FOR DAMAGES**

misrepresentations that the Company did not have income to commence payment on the Debt.

     **d.** Plaintiff would receive payments and revenue reporting statements from its deal with Tubi TV, which Defendant stated in writing on multiple occasions it would be provided (according to Defendant's contractual obligations to Plaintiff) but were never sent.

67. When the defendants made these representations, they knew them to be false and made these representations with the intention to deceive and defraud Plaintiff and induce Plaintiff to act in reliance on these representations in the manner hereinafter, or with the expectation that Plaintiff would so act.

68. Plaintiff, at the time these representations were made by Defendant and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Plaintiff was induced to, and did agree to continue to await payment and forego the engagement of personal and professional business endeavors at great financial loss, limitation and extreme emotional distress.

69. Had Plaintiff known the actual facts, he would not have taken such actions. Plaintiff's reliance on Defendants' representation was justified because Defendants acted consistent with the express and/or implied agreement reference herein to compensate Plaintiff for his work as it relates to the IP as a partner, co-owner business executive, executive producer, etc. and owed a fiduciary duty to Plaintiff at the time the representations were made.

70. As a proximate result of the fraudulent conduct of Defendants, Plaintiff has been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this court. The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Plaintiff of property, legal rights, compensation or otherwise causing injury and was despicable conduct that subjected to cruel and unjust hardship and conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**COMPLAINT FOR DAMAGES**

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for an Order and Judgment in his favor and as against Defendants, jointly and severally, as follows:

1. Entry of an order (on a preliminary and permanent basis) requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from: (a) Using in any manner the "Black and Sexy TV" mark, or any name, mark or domain name that wholly incorporates the Black and Sexy TV mark or is confusingly similar to or a colorable imitation of this mark;

2. Ordering Defendants to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all Internet webpages / scripts / html code, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Defendants or its agents bearing the Black and Sexy TV word mark or logo, in any manner, or any mark that is confusingly similar to or a colorable imitation of these marks;

3. Directing Defendants to provide an accounting of profits made by Defendants as a result of Defendants' unlawful conduct;

4. Ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction; including ceasing all offering of services under Black and Sexy TV's name and marks as set forth above;

5. Ordering Defendants to pay a judgment in the amount of Plaintiff's actual and special damages under 15 U.S.C. § 1117 and California law, as well as Defendants' profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial;

6. Ordering Defendants to pay Plaintiff's reasonable attorney's fees and costs of this action under 15 U.S.C. § 1117 and/or California law;

7. Ordering Defendants to pay a judgment for enhanced damages under 15 U.S.C. § 1117 and punitive damages under California law as appropriate;

**COMPLAINT FOR DAMAGES**

8. Determining that Defendants have infringed on Plaintiff's Trademark and copyright interests in the IP;

9. That Defendants, and their agents, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing on Plaintiff's trademark and copyright interests in the IP or from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived, copied, and/or sampled from the subject trademark and copyright rights, in whatever medium, or to participate or assist in any such activity;

10. That Defendants, and all their representatives, agents, servants, employees, officers, directors, partners, attorneys, subsidiaries, and all persons under their control or acting in active concert or participation with them, be ordered to immediately post a notice on each of its websites stating that the prior use of the subject Trademark and copyright interests in the IP was unauthorized;

11. That Defendants, their affiliates and licensees, immediately cease and desist from any further reproduction, distribution, transmission, or other use of the Trademark and copyright in the IP;

12. That judgment be entered in favor of Plaintiff and against Defendants for the actual damages suffered by Plaintiff and for any profits attributable to the infringement of Plaintiff's trademark and copyright in the IP, the amount of which, at present, cannot be fully ascertained <u>provided, however</u>, based on Plaintiff's calculations as of January 30, 2024, after a thorough review of Defendant's Profit Statements, the Debt and Company's Outstanding Financial Obligations (including interest thereon) are fully ascertainable and currently amounts to Four Hundred Ninety-Three Thousand Nine Hundred Fifty-Six United States Dollars and Eight One Cents (US$493,956.81) in the aggregate.

13. That judgment be entered in favor of Plaintiff and against Defendants for statutory damages based on Defendants' acts of infringement, pursuant to 17 U.S.C. § 504;

14. That all gains, profits, and advantages derived by Defendants from their acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of Plaintiff;

**COMPLAINT FOR DAMAGES**

15. That Defendants be ordered to furnish to Plaintiff a complete and accurate accounting of all profits earned in connection with their use of the subject Trademark and copyright in the IP;

16. That judgment be entered in favor of Plaintiff and against Defendants for punitive damages for their willful disregard of Plaintiff's rights;

17. That judgment be entered against Defendants for Plaintiff's costs, disbursement and attorneys' fees pursuant to 17 U.S.C. §§ 101, *et seq.*; and

18. That the Court grant such other and further relief as this Court deems just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil L.R. 3-6, Plaintiff hereby demands a trial by jury on all issues triable in this action.

Dated: February 2, 2024                                  ARS COUNSEL, P.C.

                                                         By: *Almuhtada Smith*
                                                             ALMUHTADA SMITH

                                                         Attorney for Jerome Christopher Hamilton

---

**COMPLAINT FOR DAMAGES**